## Case No. 16,505.

UNITED STATES v. THREE HUNDRED AND SEVENTY-TWO PIPES OF DISTILLED SPIRITS.

[5 Sawy. 421.] [1]

District Court, D. California. Feb. 27, 1879.

INTERNAL REVENUE—ILLICIT DISTILLING—FORFEITURES—INNOCENT PURCHASERS AND MORTGAGEES.

The forfeiture denounced in section 3281 of the Revised Statutes is of all distilled spirits, etc., found in the distillery, etc., and of all distilled spirits wherever found owned by the distiller at the time of seizure. It does not extend to spirits not the product, and which have not been the subject of illicit operations, and which have been disposed of by him to innocent

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

parties for value, notwithstanding that the distiller may have owned them at some time during the period of his illicit operations. A bona fide mortgagee of such spirits will be protected to the extent of his lien, notwithstanding that the legal title may remain in the distiller. And conversely, his rights will be limited to the enforcement of his lien, notwithstanding that his mortgage is in the form of a bill of sale absolute on its face.

At law.

Philip Teare, U. S. Atty.

Mr. Latimer, Mr. Morrow, and Geo. Cadwalader, for defendant.

HOFFMAN, District Judge. The general proposition on which the district attorney chiefly relies in support of his demurrer is too firmly established to be questioned. Where a statute in terms denounces a forfeiture of property as a penalty for a violation of law, without alternative of value or other qualifications or provisions, or language showing a different intent, the forfeiture takes place absolutely and instantaneously on the commission of the offense, and it is not in the power of the offender, or former owner, to defeat the forfeiture by a subsequent transfer of the property, even to a bona fide purchaser. U. S. v. One Hundred Barrels of Spirits [Case No. 15,948]; 14 Wall. [81 U. S.] 44.

The question presented in this case is, whether this principle is applicable. The information, in substance, alleges that certain persons therein named did, during the months of May, June, July, August, September, October and November, A. D. 1878, at a certain distillery owned by them, manufacture a large quantity, to wit, ten thousand gallons of distilled spirits, with intent to defraud the United States, and for the purpose of selling the same with intent to defraud the United States, and that the United States has been thereby defrauded of the sum of nine thousand dollars. That the fourteen thousand seven hundred and twenty-one and forty one hundredths gallons of spirits seized were manufactured at said distillery with intent to defraud the United States of the tax due thereon. The libel further alleges that at the time of the seizure the said spirits were owned by the persons who owned and carried on said distillery as aforesaid, and were found in a certain warehouse in the city and county of Sacramento. The answer of the National Gold Bank of D. O. Mills & Co. alleges in substance that at the time of the seizure the distilled spirits in question were lawfully stored in the United States bonded warehouse at Sacramento; that the gold bank had, previously to the seizure, purchased the three hundred and fifty-two packages claimed by it under a regular bill of sale, absolute on its face, but intended as security for advances made by it to the full value of the liquor transferred; that the change of title was duly registered in the bonded warehouse, and also on the books of the collector's office; that the sales and transfers were made in good faith,

and in the ordinary course of trade, and without any suspicion of any irregularity on the part of the distillery. It is further alleged that prior to the seizure, the claimant had offered to pay the government tax. The special plea of Mrs. Hinkson, claimant of fifty packages of the liquor, sets forth the same state of facts, with the addition that the fifty packages were manufactured the year previous to the period during which the information alleges the distillery was operated in violation of law.

The information is founded upon section 3281 of the Revised Statutes. This section, in substance, provides that: "Every person who engages in, or carries on, the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, or any part thereof, shall, etc. * * * All the distilled spirits or wines owned by such person, wherever found, and all the distilled spirits or wines and personal property found in the distillery, or in any building, room, yard, or inclosure connected therewith, and used in, or constituting a part of the premises, * * * shall be forfeited to the United States."

It is contended, on the part of the United States, that the forfeiture thus denounced extends to all spirits of which the distiller was at any time the owner within the period during which the illicit operations have been carried on. This forfeiture is claimed to have accrued, notwithstanding that no unlawful practices were used in the production or disposition of the liquors seized. Indeed, under the construction contended for, it would not be necessary to show that the spirits had ever been in the distillery. They may have been lawfully imported from abroad, and disposed of by the distiller to retail dealers, and by them sold to their customers. It would be sufficient to secure the forfeiture if the distiller was at any time during his illicit operations the owner, for no matter how short a time, of the spirits seized. It is obvious that a construction so harsh and oppressive, so destructive of the freedom and security of the ordinary operations of trade, and which would visit the consequences of guilt upon innocent parties who had no means of protecting themselves, ought not, unless the language be imperative, to be admitted. The forfeiture embraces all spirits of two classes: (1) Those found on the premises; (2) spirits owned by the distiller, wherever found. It is evident that the first description refers to spirits found on the premises at the time of the seizure. It is not contended that it embraces spirits which might have been found there at any time during the illicit operations. The phrase "owned by such person, wherever found" is clearly used with a similar reference. It does not mean spirits which may have at any time during the illicit operations been owned by him, but those spirits which are owned by him when found; and it should be construed as if it read "all spirits, wherever

found, of which he is the owner;" nor will this construction necessarily be unfavorable to the government; for the spirits owned by the distiller at the time of the seizure may exceed in quantity those owned by him during the period of his illicit operations, especially if that period has been brief and not recent. This interpretation of the section in question, seems to have been unhesitatingly adopted by Mr. J. Dillon in U. S. v. One Hundred Barrels of Spirits [Case No. 15,948], and on this point the decision was not reversed by the supreme court. In U. S. v. Distillery at Spring Valley [Id. 14,963], the court took the same view. The Case of Henderson, 14 Wall. [81 U. S.] 44, is confidently relied on by the district attorney, but that case arose under a different section of the act (section 3450, Rev. St.). That section denounced a forfeiture of spirits removed with intent to defraud the United States of the tax imposed thereon. It was held that the forfeiture attached at the moment of removal, and that the title of the United States, thus acquired, could not be divested by a subsequent transfer to an innocent purchaser. The fraudulent removal impressed upon the spirits a guilty or illicit character, which adhered to them as long as they existed, and in whosesoever hands they might pass. In the case at bar it is not pretended that the spirits seized were the product, or had been the subject of any illicit operations. The construction contended for would, as before remarked, include in the forfeiture spirits which had never been within the distillery or manufactured by the delinquent distiller, and would therefore be wholly untainted by any fraud committed in respect of them.

It is evident that the ruling of the supreme court in Henderson's Case [supra] has no application to the case at bar. Construing the section then as embracing only those spirits which were found on the premises, or of which the distiller was the owner at the time of the seizure, the question arises in what sense is the term "owner" used? On behalf of the claimants it is contended that it refers merely to the legal ownership, and that, inasmuch as the legal title to the spirits was in the claimants under the bill of sale and transfer of the warehouseman's receipt, they were not liable to seizure, notwithstanding that they were held merely as security for advances.

In the present case, the advances are alleged to have amounted to the whole value of the property mortgaged, but the principle contended for would apply to cases where the mortgage debt is insignificant compared with the value of the whole property mortgaged. The guilty distiller would save, from just condemnation, the whole excess of value, over and above the amount of the mortgage debt. On the other hand, the construction contended for might work a great hardship on innocent parties. If the distiller had been employed as a mere agent to purchase liquors for his

employers, with instructions to take the bill of sale in his own name, and to receive and hold the goods, those goods would, if the legal title is alone to be looked to, be liable to forfeiture for the distiller's offenses, although he has no beneficial interest whatever in them.

I think that the word "owner" in the statute is used in its popular, and not in its technical, sense; and that the intent of congress was to condemn the property of the delinquent to the extent to which it, in fact, existed in him at the time of the seizure, and without reference to the technical legal title. The right of a mortgagee would thus be protected, while the property of the distiller, as it really exists, would be forfeited.

It may be objected, that to allow the mortgagee to appropriate the proceeds of the goods to the payment of the debt, is in effect to pay off the distiller's debt with the proceeds of his own forfeited property; and that he should not be allowed this benefit unless he is insolvent, and the mortgagee has no other means of reimbursing himself. Such, no doubt, might be the practical operation of the construction proposed. But the inquiry into the solvency of the mortgagor might be extremely difficult, or practically impossible, especially in cases like the present, where the distillery is owned by a corporation, and the inquiry might extend to an investigation, not only of the solvency of the company, but also to that of each of the stockholders, who are by law liable for its debts.

But the true and conclusive answer to this objection is, that the mortgagee has a vested interest in the property mortgaged. He has the legal title, subject to be revested in the mortgagor, upon the performance of the condition, and the absolute title at law in case of breach of the condition. In the exercise of these rights he is entitled to protection, nor can he be required before availing himself of the benefit of his security to enter upon a protracted and expensive effort to collect his debt by a personal suit against his debtor, or others who may be liable for it. But whilst he retains as against the United States all the rights he acquired as against the mortgagor, he can possess no other or additional rights. He can have the full benefit of his security up to the amount of the debt due him. But to the excess he can make no pretension. The United States having succeeded to the rights of the mortgagor, can redeem the mortgaged goods by paying the debt, or on their condemnation and sale, the court may direct the application to the payment of the debt of so much of their proceeds as may be necessary.

If this view of the respective rights and relations of the United States and of the claimants to the goods under seizure be correct, it follows that the facts set up in the plea of Mrs. Hinkson, claimant of the fifty packages, are, if true, a bar to the suit; and that the facts alleged in the plea of the gold bank are, if true, an entire or partial bar, according as it shall appear that the value of the property

equals or is in excess of the amount for which the claimant has a mortgage-lien upon it.

The demurrer must therefore be overruled.